# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

ALQUAN MUSLIM )

        *Plaintiff,* )

        v. )

        )

STEPHEN D'ILIO, et al. )

        *Defendants.* )

        )

Civil Action No:

15-cv-05796 (PGS)(DEA)

 

This matter comes before the Court on several motions filed by Plaintiff, namely a motion for reconsideration, a motion to appeal Magistrate Arpert's order, a motion for appointment of counsel (ECF Nos. 55, 54, & 55), as well as Defendants' motion for summary judgment. (ECF No. 56)[1].

Plaintiff, a prisoner in New Jersey State Prison ("NJSP"), filed a complaint alleging several violations of the Eighth Amendment for unconstitutional conditions of confinement and denial of medical care. Compl., ECF No. 1. Plaintiff alleged that he was confined to the administrative segregation unit for 90 days as the result of a disciplinary infraction. *Id.* ¶ 6. He began experiencing shortness of breath, dizziness, and chest pains as the result of his congenital heart condition. *Ibid.* He filed an administrative remedy complaint on February 10, 2014 asking to be moved to an air-conditioned unit to help his medical conditions. *Ibid.* Administrator D'Ilio did not answer the request, but Major D'Amico denied the request. *Ibid.* Plaintiff appealed, and Associate

---

[1] The Court held oral argument on these motions on June 27, 2018, at which time Plaintiff appeared by telephone. (ECF No. 68).

Administrator Campos denied the appeal. *Ibid.* Plaintiff was released from administrative segregation on March 21, 2014. *Id.* ¶ 7.

After being released from administrative segregation, Plaintiff was placed into a general population cell with a constantly running and leaking toilet. *Ibid.* The leaking waste and smell prevented and/or interfered with Plaintiff's ability to sleep, and he alleges Administrator D'Ilio knew about the broken toilet before Plaintiff was placed into that cell. *Ibid.* Plaintiff filed an inmate remedy form ("IRF") about the conditions of the cell. He spoke with Lieutenant Kennedy about needing an air-conditioned unit because of his medical condition, and Lieutenant Kennedy told Plaintiff he would make sure Plaintiff was placed into an air-conditioned cell as soon as one was available. *Id.* ¶ 8. Despite same, as air-conditioned cells became available Lieutenant Kennedy put other prisoners into those cells instead. *Ibid.*

The Court granted Plaintiff's *in forma pauperis* application on August 17, 2015 and permitted the complaint to proceed on May 9, 2016. (ECF Nos. 2 & 4). On July 1, 2016, Plaintiff moved for leave to file a supplemental complaint. (ECF No. 14). Magistrate Judge Arpert denied the motion as Plaintiff had not included a proposed amended complaint. (ECF No. 14). Defendants filed a motion to dismiss on July 12, 2016, (ECF No. 17), and Plaintiff filed another motion for leave to file a supplemental complaint on July 21, 2016. (ECF No. 19). The Court conducted oral argument on September 26, 2016 and granted the motion to dismiss and motion for leave to file an amended complaint. (ECF No. 25). The Court directed Plaintiff to file his amended complaint within 30 days. (ECF No. 25).

Plaintiff complied with the Court's order and filed his amended complaint on October 24, 2016. (Amended Compl., ECF No. 30). In the amended complaint, Plaintiff argued the conditions in his cells were unconstitutional because there was no hot water, the toilet was too small to use,

the sink ran continuously, the cell lacked proper ventilation, there was excessive heat in the summer months, and there were frequent rodent infestations. Amended Compl. ¶ 5 (a)-(f). He alleged that he began experiencing shortness of breath on December 21, 2015 and eventually passed out. *Id.* ¶ 5(g). He was surrounded by nurses and officers when he woke up and could not estimate the period of time he had been unconscious. *Ibid.* The nurses performed an EKG and called 911 because he may have had a heart attack. *Ibid.* When Plaintiff returned to the prison, the medical department ordered that Plaintiff be placed on flat-tier only. *Ibid.*

Plaintiff's new cell was near a generator that constantly smelled of gas. *Id.* ¶ 5(h). The smell caused Plaintiff to experience breathing problems and chest pains for which he had to be taken to the prison hospital. *Ibid.* Plaintiff made several requests to be moved to a different location that housed prisoners with medical problems. *Ibid.* According to Plaintiff, a cardiologist and ear, nose, and throat doctor recommended that he be placed in a consistently air-conditioned or ventilated environment. *Ibid.*

Plaintiff was then placed into administrative segregation for 95 days. *Id.* ¶ 6. Upon his return, he discovered his cell had been searched twice within the past five days. He also found that his radio was broken, and his clothes and legal papers were on the floor. *Ibid.* He also states that he was kept in administrative segregation for three days more than his disciplinary sanctions and was never given a reason why. *Id.* ¶ 7. Plaintiff states that although he is presently housed in an air-conditioned unit, he is sharing what was designed as a single-inmate cell with another inmate. *Id.* ¶ 8. He asserts this reduces the air circulation. *Ibid.* He argues the defendants deliberately imposed these conditions on him to cause him physical and mental harm. *Ibid.*

**Plaintiff's Motions**

The Court first reviews Plaintiff's motions providing a pertinent timeline. On October 4, 2017, the Honorable Douglas E. Arpert, granted Plaintiff's motion to compel discovery a second time and extended all deadlines in the April 7, 2017 Scheduling Order by 60-Days. (ECF No. 47). Accordingly, Defendants' dispositive motions were due no later than January 8, 2018. On November 3, 2017, Plaintiff filed a motion for entry of default arguing that Defendants had not complied with Judge Arpert's October 4, 2017 Order. Plaintiff avers that he received his first set of documents from Defendant on November 6, 2017. (ECF 52, Pl. Motion for Reconsid., ¶3). Plaintiff allegedly sent two requests to the Court to Order Defendants to comply with the Court Order – the requests are not on the docket. (ECF No. ¶¶ 4-5). On January 30, 2018, Defendants submitted a letter in opposition to Plaintiff's motion for default and requested a 45-day extension in which to file a dispositive motion. On February 6, 2018, Judge Arpert issued an order granting Defendant's request to deem Plaintiff's motion for default moot. (ECF No. 50). On February 9, Judge Arpert issued an order granting Defendants' request for a 45-day extension to file dispositive motions. Defendants filed a motion for summary judgment on March 9, 2018.

### *1.* *Motion for Reconsideration*

As best the Court can tell, Plaintiff is bringing a motion for reconsideration with regards to Order ECF No. 50 issued by Judge Arpert on February 6, 2018, which deemed Plaintiff's motion for Default judgment moot. As the Court understands it, Plaintiff filed the motion (ECF No. 47) asking the Court to assess fees against Defendants in the amount of $50 dollars per day for failure to comply with the October 4, 2017 Order which mandated that Defendants should provide answers to Plaintiff's interrogatories. In the order, Judge Arpert notes that Defendants stated in a letter from January 30, 2018 that they had produced all answers to interrogatories and responses to Plaintiff's notice to produce on November 2, 2017 as per the Court's previous order on October

4, 2017. Plaintiff also objects to Defendants' request for a 45-day extension to file a motion for summary judgment granted by ECF No. 51. Plaintiff reasons that Defendants have yet to answer the original Complaint. However, the docket shows that Defendants filed an answer to the Amended complaint on February 17, 2017 (ECF No. 40) after receiving a 30-day extension from the Court. (ECF No. 37).

Motions for reconsideration are governed by Fed. R. Civ. P. 59(e) and L. Civ. R. 7.1(i). The "extraordinary remedy" of reconsideration is "to be granted sparingly." *A.K. Stamping Co., Inc., v. Instrument Specialties Co., Inc.*, 106 F. Supp. 2d 627, 662 (D.N.J. 2000) (quoting *NL Indus., Inc., v. Commercial Union Ins. Co.*, 935 F. Supp. 513, 516 (D.N.J. 1996)). The Rule "does not contemplate a Court looking to matters which were not originally presented." *Damiano v. Sony Music Entertainment, Inc.*, 975 F. Supp. 623, 634 (D.N.J. 1996) (quoting *Florham Park Chevron, Inc., v. Chevron U.S.A., Inc.*, 680 F. Supp. 159, 162 (D.N.J. 1988)). The Third Circuit has held that the "purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985), *cert. denied*, 476 U.S. 1171 (1986). "Reconsideration motions, however, may not be used to relitigate old matters, nor to raise arguments or present evidence that could have been raised prior to the entry of judgment." *NL Indus., Inc.*, 935 F. Supp. at 516; *See* Wright, Miller & Kane, *Fed. Practice and Procedure: Civil 2d § 2810.1*. To prevail on a motion for reconsideration, the movant must show: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court . . . [rendered the judgment in question]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *U.S. ex rel. Shumann v. Astrazeneca Pharm. L.P.*, 769 F.3d 837, 848-49 (3d Cir. 2014) (citing *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)). The standard of review involved in

a motion for reconsideration is high and relief is to be granted sparingly. *United States v. Jones*, 158 F.R.D. 309, 314 (D.N.J. 1994). "The Court will grant a motion for reconsideration only where its prior decision has overlooked a factual or legal issue that may alter the disposition of the matter. The word 'overlooked' is the operative term in the Rule." *Andreyko v. Sunrise Sr. Living, Inc.*, 993 F. Supp. 2d 475, 478 (D.N.J. 2014) (internal citations and quotation marks omitted). Mere disagreement with the Court's decision is not a basis for reconsideration. *United States v. Compaction Sys. Corp.*, 88 F. Supp. 2d 339, 345 (D.N.J. 1999).

Plaintiff has failed to show that he met any of the above-mentioned circumstances that would warrant reconsideration of the Court's prior decision in Order ECF No. 50 and 51. Thus the motion is DENIED.

## 2. *Appeal of Magistrate Decision*

Plaintiff's motion to appeal the Magistrate decision is based on the same issues discussed in the motion for reconsideration. Plaintiff filed a letter on February 26, 2018 (ECF No. 54) moving to appeal Magistrate Arpert's decision to grant a 45-day extension from the original due date of dispositive motions to Defendants so that they might file a motion for summary judgment.

Plaintiff argues that he objected when Defendants filed a request for an extension, but Judge Arpert granted the extension notwithstanding his objection. Plaintiff's argument in this appeal is conclusory and unsupported, and it is one within Judge Arpert's discretion.

The motion is DENIED.

## 3. *Motion to Appoint Counsel*

Plaintiff filed a motion to appoint pro bono counsel. (ECF No. 55). The reasons for this motion are similar as previously stated. In his application, Plaintiff mentions that he has been litigating this case with the help of paralegals at the New Jersey State Prison. He states that he is on several medications which cause memory loss, drowsiness, and other side effects. He lists the following medications:

```
a) Diltiazem 300 mg once a day.

b) Carvedilol 25 mg (coreg) twice a day.

c) Clonidine 0.3 mg twice a day.

d) Terazosin 10 mg once a day.

e) Atorvastation 20 mg one a day.

f) Ranexa 1000 mg twice a day.

g) Aspirin 81 mg once a day.

h) Nitro 0.3

i) Tylenols
```

He is unable to afford counsel and supports that the issues involved in this case are complex and will require significant research and investigation.

Federal law allows for a court, at its discretion, to appoint an attorney to represent any person unable to afford counsel. 28 U.S.C. § 1915; *see also Montgomery v. Pinchak*, 294 F.3d 492, 498 (3d Cir. 2002) (holding that § 1915 affords the district courts "broad discretion" to determine whether the appointment of counsel in civil litigation is appropriate). The appointment of counsel pursuant to § 1915 may be made at any point in the litigation and may be made by the district court *sua sponte*. *Tabron v. Grace*, 6 F.3d 147, 156 (3d Cir. 1993). Indigent civil litigants have no statutory right to court-appointed counsel. *Ibid.*

When deciding whether to appoint *pro bono* counsel, courts must initially decide whether a plaintiff's claim has "some merit in fact and law." *Owens v. Armstrong*, 171 F. Supp. 3d 316, 339 (D.N.J. 2016) (quoting *Tabron*, 6 F.3d at 155). The United States Court of Appeals for the Third Circuit has offered a non-exhaustive list of considerations that the district court may consider when deciding whether to appoint *pro bono* counsel, including "(1) the plaintiff's ability to present [his] own case; (2) the complexity of the legal issues; [and] (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation." *Ibid.* The court may also consider "(4) the amount the case will turn on credibility determinations; (5) whether the case will require the testimony of expert witnesses; and (6) whether the plaintiff can attain and afford counsel on his own behalf." *Ibid.* A single factor is not determinative. *Ibid.*

First, the Court examines the threshold *Tabron* factor: does Plaintiff's claim have some merit in fact and law? 6 F.3d at 155. For the purposes of evaluating this factor, the Court assumes "solely for purposes of this [request]" that Plaintiff's case has "some arguable merit in fact and law." *Montgomery*, 294 F.3d at 499. Next, the Court analyzes the additional *Tabron* factors. The first additional factor examines whether the plaintiff has the ability to present his case. *Tabron*, 6 F.3d at 156. The Third Circuit has noted that courts should consider such factors as the plaintiff's literacy, education, work experience, and prior litigation experience. *Ibid.* The plaintiff's ability to present his own case is perhaps the most significant *Tabron* factor. *Pinchak*, 294 F.3d at 501. This case was originally filed in 2015. Plaintiff was able to proceed pro se for years up to now, through discovery and motions. Plaintiff has demonstrated the ability to proceed on his own.

The second *Tabron* factor examines the complexity of the legal issues presented. If the law on a given issue is not clear, this factor will typically support the appointment of *pro bono* counsel. *Tabron*, 6 F.3d at 156. Here, the legal issues and factual circumstances surrounding Plaintiff's

claims do not appear unusually complex. The Third Circuit has noted that the deliberate indifference standard used to analyze Eighth Amendment claims is not a complex legal issue. *Parham v. Johnson*, 126 F.3d 454, 459 (3d Cir. 1997). As such, "a lay person, like [the plaintiff-prisoner], should be able to comprehend what he has to prove." *Ibid*. This is an action brought under 42 U.S.C. 1983, where Plaintiff complains about the conditions he was subject to at the prison. Discovery in this motion has been concluded.

Third, the Court considers the degree of factual investigation necessary and the ability of the Plaintiff to pursue such investigation. *Tabron*, 6 F.3d at 156. Prisoners are limited in their investigatory ability and it "may be difficult for indigent plaintiffs to understand complex discovery rules." *Montgomery v. Pinchak*, 294 F.3d at 503. Here, although Plaintiff has limited resources as a prisoner, he has been able to collect various materials and seek the help of a paralegal to move this case along for years.

The fourth *Tabron* factor addresses credibility determinations. 6 F.3d at 156. If a case appears to be "*solely* a swearing contest" relying on "credibility determinations," this factor will weigh in favor of appointing *pro bono* counsel. *Woodham v. Sayre Borough Police Dep't.*, 191 F. App'x 111, 116 (3d Cir. 2006) (emphasis added). At this point, it does not appear that this matter will be "solely a swearing contest" because Plaintiff has thousands of pages of medical records to support his claims. Thus, this factor weighs against the appointment of counsel.

Fifth, the Court considers whether the case will require the testimony of an expert witness. *Tabron*, 6 F.3d at 156. Some of Plaintiff's claims will require testimony as to causation. This factor weighs in favor of appointing counsel.

Finally, the Court considers whether the plaintiff can retain and afford counsel. *Tabron*, 6 F.3d at 156-57. This factor is presumptively fulfilled when a plaintiff is granted permission to

proceed *in forma pauperis*. *Woodham*, 191 F.App'x at 116. Plaintiff is proceeding *in forma pauperis* in this matter. However, indigency, absent satisfaction of other *Tabron* factors, does not itself warrant the appointment of counsel. *See Christy v. Robinson*, 216 F. Supp. 2d 398, 410 (D.N.J. 2002).

The *Tabron* factors weigh against appointing counsel, and Plaintiff's motion is DENIED.

## Defendants' Motion for Summary Judgment

Under the Federal Rules of Civil Procedure, "[s]ummary judgment is appropriate only if 'the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.' In making that determination, a court must view the evidence 'in the light most favorable to the opposing party.'" *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (quoting Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). A "genuine" dispute of "material" fact exists where a reasonable jury's review of the evidence could result in "a verdict for the non-moving party" or where such fact might otherwise affect the disposition of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must grant summary judgment against any party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Properly applied, Rule 56 will "isolate and dispose of factually unsupported claims or defenses" before those issues come to trial. *Id.* at 323–24.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine

issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130–31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990).

Although pro se pleadings are "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted), "a pro se plaintiff is not exempt from his burden of providing some affirmative *evidence*, i.e. not just mere allegations, to establish a prima facie case, and to show that there is a genuine dispute for trial." *Niblack v. Murray*, No. 12–6910, 2016 WL 4086775, at *2 (D.N.J. July 29, 2016) (emphasis in original) (citing *Barnett v. N.J. Transit Corp.*, 573 F. App'x 239, 243 (3d Cir. 2014)).

## 1. *Deliberate Indifference to Medical Needs*

Defendants assert Plaintiff cannot show they were deliberately indifferent to his medical needs because "Plaintiff received consistent medical care for his heart condition, which did not include any order that Plaintiff required an air conditioned or single cell." (ECF No. 56-1 at 10).

In order to succeed on a claim of a violation of the Eighth Amendment right to adequate medical care, a convicted and sentenced inmate must prove: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003). There does not appear to be a dispute that Plaintiff's heart condition is a serious medical need.

"Deliberate indifference is a 'subjective standard of liability consistent with recklessness as that term is defined in criminal law.'" *Natale*, 318 F.3d at 582 (quoting *Nicini v. Morra*, 212

F.3d 798, 811 (3d Cir. 2000)). Deliberate indifference has been found in "situations where there was 'objective evidence that [a] plaintiff had serious need for medical care,' and prison officials ignored that evidence." *Ibid.* (quoting *Nicini*, 212 F.3d at 815 n.14). To find a prison official liable for violating the Eighth Amendment, there must be some evidence that they were aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . draw the inference." *Ibid.* (internal quotation marks omitted). The Third Circuit has also found deliberate indifference "'where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment.'" *Parkell v. Danberg*, 833 F.3d 313, 337 (3d Cir. 2016) (quoting *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)).

Generally, however, "[c]orrectional defendant-administrators who are not themselves physicians cannot 'be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor.'" *Davis v. Norwood*, 614 F. App'x 602, 605 (3d Cir. 2015) (quoting *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993)). *See also Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Spruill*, 372 F.3d at 236.

There is a factual question as to whether Defendants were deliberately indifferent to Plaintiff's medical needs due to their failure to place him in an air-conditioned cell prior to August 31, 2016. *See* Defendants' Statement of Facts ("DSOF") (ECF No. 56-3) ¶ 13 (asserting Plaintiff

was transferred to an air-conditioned cell on August 31, 2016). Defendants argue Plaintiff's medical records include orders for elevator passes, lower bunks, and no work, but do not include placement in air-conditioned cells or in single-inmate cell. (DSOF ¶¶ 21-23).[2] Dr. Hesham Soliman, the Managing Physician of the New Jersey Department of Corrections, likewise certified the medical orders do not contain orders for air conditioning or single-inmate placement. ("Soliman Cert." ECF No. 56-2 at 77 ¶¶ 6-7).

Plaintiff certified Defendants have final control over the housing assignments at NJSP. Plaintiff's Responsive Statement of Facts ("PRSOF") (ECF No. 63 at 29 ¶ 21). He submitted a cardiology consultation report from Dr. DeStefano and signed by Dr. Abu Ahsan on June 23, 2014. (Exhibit B, ECF No. 63 at 38). One of the recommendations reads: "Due to nose bleeds, the patient needs a constant environment and preferably air conditioner." *Ibid.* An E.N.T. consultation report signed by Nurse Donique Ivery on August 11, 2014 has "Please have the patient place [sic] in a ventilator area if possible" as one of its recommendations. (Exhibit C, ECF No. 63 at 39). Plaintiff has therefore provided two pieces of evidence indicating medical professionals recommended ventilated, air-conditioned conditions as early as June 2014 to alleviate his health conditions. There is therefore a factual question as to whether Defendants prevented Plaintiff "from receiving needed or recommended medical treatment.'" *Parkell*, 833 F.3d at 337. Defendants' motion is denied on this claim.[3]

---

[2] Defendants did not provide Plaintiff's actual medical records as part of their summary judgment motion "in the interest of brevity" as Plaintiff's records total over 1000 pages. *See* DSOF ¶ 20 n.1. In response to the Court's questions over the documents provided by Plaintiff, Defendants offered to produce the actual records. The Court considers the summary judgment record closed as it was Defendants' responsibility to produce the evidence necessary to show it is entitled to judgment as a matter of law.

[3] Plaintiff has produced no evidence that a medical professional recommended he be placed in a single-inmate cell. His deliberate indifference claim at trial is therefore limited to his claim that

## 2.    *Conditions of Confinement*

Defendants further argue they are entitled to summary judgment on Plaintiff's conditions of confinement claims based on the following allegedly unconstitutional conditions: (1) lack of air conditioning; (2) being placed in a two-man cell; (3) having a broken toilet; (4) lack of hot water; and (5) rodent and insect infestation.

"The Constitution 'does not mandate comfortable prisons,' but neither does it permit inhumane ones and it is now settled that 'the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981); *Helling v. McKinney*, 509 U.S. 25, 31 (1993)). "The Eighth Amendment imposes duties on prison officials to 'provide humane conditions of confinement' and 'ensure that inmates receive adequate food, clothing, shelter, and medical care.'" *Barndt v. Wenerowicz*, 698 F. App'x 673, 676–77 (3d Cir. 2017) (quoting *Farmer*, 511 U.S. at 832). "To establish an Eighth Amendment conditions of confinement claim, [Plaintiff] must show that (1) the deprivation alleged was objectively, 'sufficiently serious' such that the prison officials' acts or omissions resulted in the denial of 'the minimal civilized measure of life's necessities'; and (2) that the prison officials exhibited a 'deliberate indifference' to his health and safety." *Id.* at 677 (quoting *Farmer*, 511 U.S. at 834). "The knowledge element of deliberate indifference is subjective, not objective knowledge, meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001). "In actions challenging a large number of prison conditions, a district court . . .

---

Defendants failed to follow the recommendation to place him in an air-conditioned and/or ventilated cell.

must inquire whether the challenged conditions alone or in combination violate eighth amendment standards, recognizing that the totality of the conditions may deprive inmates of the minimal civilized measure of life's necessities." *Peterkin v. Jeffes*, 855 F.2d 1021, 1024 (3d Cir. 1988) (internal quotation marks omitted).

### A. Lack of Air Conditioning

Defendants argue that lack of air conditioning is not a constitutional violation and that the issue is now moot because Plaintiff has been moved to a unit with air conditioning by his own admission in his amended complaint. (DSOF ¶¶ 13-14, 17).

"[I]t is well settled that exposing prisoners to extreme temperatures without adequate ventilation may violate the Eighth Amendment." *Walker v. Schult*, 717 F.3d 119, 126 (2d Cir. 2013). *See also Chandler v. Crosby*, 379 F.3d 1278, 1294 (11th Cir. 2004) ("[T]he Eighth Amendment applies to prisoner claims of inadequate cooling and ventilation."). Plaintiff argues Defendants have long been aware of the conditions in the West Compound because there have been other civil lawsuits about the conditions, including a state class action lawsuit. Plaintiff submitted IRFs stating that the lack of air conditioning made it hard to breathe. (*See* ECF No. 56-2 at 26-31). Another inmate, Rajhn Kalim, submitted an affidavit in support of Plaintiff's claims of the conditions. Kalim states he lived in the West Compound with Plaintiff in 2014, and there was "excessive heat on unit in summer" and that Plaintiff was taken to medical twice "due to breathing problems he was having on said unit!" (Exhibit E, ECF No. 63 ¶¶ 3, 23). The two medical reports previously mentioned recommend placement in ventilated and/or air-conditioned units. (*See* Exhibit B, ECF No. 63 at 38 ("Due to nose bleeds, the patient needs a constant environment and preferably air conditioner."); Exhibit C, ECF No. 63 at 39 ("Please have the patient place [sic] in a ventilator area if possible")). Construing the evidence in Plaintiff's favor on summary

judgment, there is a question as to whether Defendants ignored medical opinions that the environment was harmful to Plaintiff's health.[4] Summary judgment is denied due to this factual question.

### B. Placement in a Double-Cell

Plaintiff further alleged it was unconstitutional for him to be placed in a double-cell, even one with air conditioning, because having another person in the cell made it difficult to breathe. Defendants argue that Plaintiff has no right to specific housing assignment and this Court lacks the authority to review placement as it is a final agency decision that should be brought before the New Jersey Superior Court, Appellate Division.

The Supreme Court has held "that an examination of a state statute or regulation should not be conducted unless the challenged restraint on freedom 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000) (quoting *Sandin v. Connor*, 515 U.S. 472, 480 (1995)). Plaintiff alleges that being in a two-man cell caused inadequate air circulation and that Lieutenant Kennedy "knowing Plaintiff's condition deliberately assigned Plaintiff to a two man cell to further frustrate Plaintiff physically and mentally harm [sic]." Amended Compl. ¶ 8. This Court has the authority to review claims that overcrowding in a cell caused inhumane conditions of confinement. *See, e.g.*, *Rhodes v. Chapman*, 452 U.S. 337, 348–50 (1981) (holding double-celling by itself did not violate Eighth Amendment).

Other than Plaintiff's unsupported allegations and speculation, there is nothing in the record that indicates another person in the air-conditioned cell reduces the air flow to a level that would impact Plaintiff's breathing, and Plaintiff appears to concede this point. *See* PRSOF ¶ 23

---

[4] Plaintiff will still have to prove causation at trial.

("Plaintiff did not assert that there were orders from medical professionals requiring his placement in a single-man cell."). Plaintiff's October 20, 2015 IRF only indicates that a doctor recommended a "constant environment of air condition or ventilator." (ECF No. 56-2 at 33). His electronic inquiries also indicate a medical recommendation of ventilation, but not for a single-person cell. (*See* ECF No. 56-2 at 27, 37-38, 40, 42, 44-45). *See also* Soliman Cert. ¶ 7 ("There are no orders for a single cell.").

### C. Broken Toilet and Sink

Plaintiff also alleged the sink and toilet in his cell were broken to the point of being unsanitary in violation of the Eighth Amendment. "Sanitation is one of the basic human needs recognized by eighth amendment cases." *Peterkin v. Jeffes*, 855 F.2d 1021, 1027–28 (3d Cir. 1988). "[H]uman waste has been considered particularly offensive so that courts have been especially cautious about condoning conditions that include an inmate's proximity to [it]." *McBride v. Deer*, 240 F.3d 1287, 1292 (10th Cir. 2001) (internal quotation marks omitted) (alteration in original). Plaintiff alleged in his original complaint that the toilet in his West Compound cell ran constantly and leaked all over the floor. Compl. ¶ 7. He also states the stench was unbearable. *Ibid.* According to the IRF, he was moved from the cell on March 25, 2014, the same day he originally filed his IRF about the toilet. (ECF No. 56-2 at 27). This is supported by the Progress Notes Report which indicates Plaintiff moved from NJSP-WEST-2-LEFT-2-TIER-CELL 092 to NJSP-WEST-2-LEFT-2-FLATS-CELL 06 on March 25, 2014. (ECF No. 56-2 at 19). The fact that he was moved from the location after prison officials were alerted to the problem does not support a finding of deliberate indifference to Plaintiff's conditions of confinement. Lieutenant Kennedy denied knowing of any work order for the toilet in Cell 092 before Plaintiff was placed in that cell. (Kennedy Interrogatories, ECF No. 56-2 at 56 ¶ 12). Plaintiff states:

"Plaintiff was moved on the same day he filed the IRF; however, because Plaintiff had been complaining for five days and was only moved to a different cell after the cell flooded as a result of the broken toilet." (ECF No. 63 at 19). He states the new cell also had a broken toilet, and the grievance he filed was denied as duplicative. (Exhibit A, ECF No. 63 at 36-37).

Plaintiff also alleged in his Amended Complaint that his toilet was too small. "Plaintiff could not defecate and urinate at the same time. Instead, he had to choose between positioning the penis over the bowel [sic] to urinate, or rest the genitalia on the seat over the edge of the bowel [sic] to defecate." Amended Compl. ¶ 5(b). Administrator D'Ilio indicated the toilets are 20 inches wide, 16.75 inches deep, with the opening diameter of 9.75 inches. (D'Ilio Interrogatories ¶ 24). These allegations, while undoubtedly unpleasant, do not seem to rise to the objectively serious deprivation required by the Eighth Amendment, nor is there any evidence that Defendants were deliberately indifferent to the conditions.

### D. Lack of Hot Water

Plaintiff also asserts the lack of hot water inside his cells is a violation of the Eighth Amendment. Defendants argue there is no hot water inside the cells to which Plaintiff is assigned as a security matter, and the lack of hot water does not rise to the level of an Eighth Amendment violation as inmates are able to get hot water from other sources.

Other courts have found "adequate hot water as a reasonable condition of confinement. That is particularly true when inadequate hot water is combined with other factors affecting health and safety." *Grohs v. Yatauro*, 984 F. Supp. 2d 273, 285 (D.N.J. 2013). "In contrast, courts have denied claims based on inadequate hot water because that condition was not combined with additional, significant conditions." *Vanaman v. Robinson*, No. 18-1003, 2018 WL 1073370, at *2 (D.N.J. Feb. 27, 2018) (citing cases). *See also Watkins v. Johnson*, 375 F. Supp. 1005, 1010-11

18

(E.D. Pa. 1974) (conditions of segregated confinement, including a cell with no hot water, did not violate the Eighth Amendment).

Here, Plaintiff alleges that "water temperatures were so cold in the winter that washing hands and face were painful for Plaintiff." Amended Compl. ¶ 5(a). Plaintiff does not allege any other harm from the lack of hot water aside from discomfort in the winter when washing his hands and face.

Lieutenant Kennedy and Administrator D'Ilio admit that only cold water is available in the cells in 7-wing. Kennedy Interrogatories ¶ 24; D'Ilio Interrogatories ¶ 25. They state hot water is available to inmates housed in 7-wing outside of their cell. *Ibid.* The response to Plaintiff's March 25, 2014 IRF told him that inmates can get hot water from the "cambro water dispenser and stinger." (ECF No. 56-2 at 31); DSOF ¶ 8. Plaintiff does not appear to contest that fact but states that access to the cambros are limited to times when inmate runners are available. "The hours hot water is available via runners is 6:30 am to 10:30 am; 11:30 am to 1:00 pm; 2:30 pm to 3:30 pm; 4:30 pm to 6:30 pm; and 7:30 pm to 8:45 pm. After 8:45 pm, no hot water is available to inmates housed in the West Compound." PRSOF 7. Construing the facts in Plaintiff's favor, hot water is available to inmates via inmate runner at certain times during the day. Based on these facts, Plaintiff's claim is insufficient to find an Eighth Amendment violation.

### E. Totality of the Circumstances

"In actions challenging a large number of prison conditions, a district court . . . must inquire whether the challenged conditions alone or in combination violate eighth amendment standards, recognizing that the totality of the conditions may deprive inmates of the minimal civilized measure of life's necessities." *Peterkin v. Jeffes*, 855 F.2d 1021, 1024 (3d Cir. 1988) (internal quotation marks omitted). Considering all the alleged conditions, a reasonable jury could not find

in favor of Plaintiff on the record before the Court apart from his claims regarding air conditioning and ventilation. Plaintiff has provided enough evidence to survive summary judgment on his claims that Defendants violated the Eighth Amendment by failing to house him in an air conditioned or ventilated cell prior to 2016. Specifically, Plaintiff has provided two medical reports indicating a medical need for air conditioning or ventilation in his cell as early as 2014.

Plaintiff's Eighth Amendment claim will proceed to the jury solely on his claims regarding air conditioning and ventilation.[5]

### 3. *Failure to Exhaust Administrative Remedies*

Defendants assert they are entitled to summary judgment on Plaintiff's claim that the conditions of confinement violate the Eighth Amendment due to rodent and insect infestations because Plaintiff failed to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA") of 1995.

The PLRA "mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions." *Ross v. Blake*, 136 S. Ct. 1850, 1854–55 (2016) (quoting 42 U.S.C. § 1997e(a)). "[T]hat language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." *Id.* at 1856 (citing *Woodford v. Ngo*, 548 U.S. 81, 85 (2007)). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). This includes constitutional claims, *Woodford*, 548 U.S. at 91 n.2, and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they

---

[5] Defendants did not raise qualified immunity as a defense in their papers. The Court therefore declines to consider its application.

allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion must be proper, meaning "prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218 (quoting *Woodford*, 548 U.S. at 88). "A prisoner must exhaust these remedies 'in the literal sense[;]' no further avenues in the prison's grievance process should be available." *Smith v. Lagana*, 574 F. App'x 130, 131 (3d Cir. 2014) (quoting *Spruill v. Gillis*, 372 F.3d 218, 232 (3d Cir. 2004)).

District courts can decide whether plaintiffs exhausted their administrative remedies without a jury even if there are disputed facts. *See Small v. Camden Cty.*, 728 F.3d 265, 270 (3d Cir. 2013) ("[I]t is of no consequence that here, as is often the case, there are disputed facts that must be resolved in order to determine whether the claims were exhausted."). The Court informed the parties of its intent to resolve the exhaustion issue and gave them an opportunity to provide further information. (ECF No. 60). *See Paladino v. Newsome*, 885 F.3d 203 (3d Cir. 2018) (requiring district courts to provide parties notice and an opportunity to respond before deciding factual issues such as exhaustion). The parties submitted supplemental materials.

"Failure to exhaust administrative remedies is an affirmative defense that must be pled and proven by the defendant." *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002). NJSP's exhaustion procedure follows the standard NJDOC procedure codified at New Jersey Administrative Code § 10A:1-4.4. "The comprehensive Inmate Remedy System, includes an 'Inmate Inquiry Form,' and/or 'Inmate Grievance Form,' and an 'Administrative Appeal,' which must be utilized and fully exhausted prior to an inmate filing any legal action regarding information requests, issues, concerns, and/or complaints." N.J. ADMIN. CODE § 10A:1-4.4(d). "The decision or finding of the Administrator or designee to the 'Administrative Appeal' is the final level of

review and decision or finding of the New Jersey Department of Corrections." N.J. ADMIN. CODE § 10A:1-4.6(d).

Defendants submit as evidence what purports to be copies of all IRFs filed by Plaintiff between February 10, 2014 and July 29, 2017. *See* DSOF ¶ 18. Defendants argue that since none of these IRFs allege rodent infestations, Plaintiff failed to exhaust his administrative remedies on this claim. DSOF ¶ 19. *See also* Exhibit B. Plaintiff states he first raised his claims of rodent and insect infestations in his supplemental complaint and exhausted this claim in 2015. (ECF No. 64 at 1-2). He offers two forms as evidence that he exhausted: an IRF dated March 25, 2014 and an inquiry form dated December 5, 2015. (ECF No. 64 at 4-5). Plaintiff did not argue in his supplemental materials or at oral argument that he submitted documents that have not been presented to the Court, nor does he argue that the administrative process was unavailable to him. The Court therefore concludes an evidentiary hearing is not necessary to further decide the exhaustion issue.

The Court finds that Plaintiff failed to exhaust his administrative remedies on the issue of the rodent infestation. Plaintiff's March 25 IRF does not mention rodents at all, and the December 5, 2015 inquiry form does not comply with the exhaustion requirements because it does not follow the proper protocols.[6] Plaintiff did not file a formal IRF regarding the rodent infestation and obtain a final decision from the NJSP administration. Plaintiff's arguments that he did not have to pursue further administrative remedies because he was satisfied with the result of the informal request do not justify his failure to exhaust.

---

[6] A memorandum to the inmate population from the administrator indicates the purpose of the inmate inquiry form is to "make routine inquiries and obtain information" whereas the grievance form (the IRF) is intended as the "internal administrative means for the resolution of <u>complaints</u> associated with the conditions of an inmate's confinement." (ECF No. 66 at 7) (emphasis in original).

"An inmate has no obligation to appeal from a grant of relief, or a partial grant that satisfies him, in order to exhaust his administrative remedies. Nor is it the prisoner's responsibility to ensure that prison officials actually provide the relief that they have promised." *Harvey v. Jordan*, 605 F.3d 681, 685 (9th Cir. 2010). In *Harvey*, an inmate filed a grievance requesting a disciplinary hearing on an outstanding disciplinary charge and a copy of a videotape to use in the hearing. In response, prison officials promised to provide both the hearing and to let him view the videotape before the hearing. *Ibid.* The inmate did not receive a copy of the tape, and when he appealed the original decision it was denied as untimely. *Ibid.* The Ninth Circuit reversed the district court's dismissal of his § 1983 due process claim for failure to exhaust, concluding "[o]nce the prison officials purported to grant relief with which he was satisfied, his exhaustion obligation ended." *Ibid. See also Abney v. McGinnis*, 380 F.3d 663, 669 (2d Cir. 2004) ("A prisoner who has not received promised relief is not required to file a new grievance where doing so may result in a never-ending cycle of exhaustion.").

Plaintiff's case is distinguishable from *Harvey* and *Abney*. This is not a case in which defendants agreed to give Plaintiff his requested relief and failed to deliver on that promise or failed to implement the favorable grievance responses. *See Abney*, 380 F.3d at 669 (holding plaintiff was not required to appeal rulings that promised he would receive footwear when defendants never in fact provided footwear). A comparable situation would be if Defendants said they would place traps or call an exterminator but ultimately failed to do so. Here, Plaintiff told defendants his toilet was leaking, and Defendants specifically told Plaintiff to "submit a remedy to Maintenance for any electrical or plumbing issues." (ECF No. 64 at 5). In other words, Plaintiff was informed that he would have to use the administrative remedy system for further relief. Plaintiff did not do so despite having an available remedy system.

The Court finds that Plaintiff failed to exhaust his administrative remedies on his claims of rodent infestation. Defendants are therefore entitled to summary judgment.

### F. Administrative Segregation

Although Defendants do not address Plaintiff's claim that he was kept in administrative segregation longer than his period of punishment in their summary judgment motion, the Court may address it under 28 U.S.C. § 1915 even though Defendants failed to address it in their summary judgment motion. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) (noting that the court "shall dismiss the case *at any time* if the court determines that the action or appeal fails to state a claim on which relief may be granted" (emphasis added)).

Plaintiff has no Due Process claim considering *Sandin v. Connor*, 515 U.S. 472, 480 (1995). "Procedural due process rights are triggered by deprivation of a legally cognizable liberty interest. For a prisoner, such a deprivation occurs when the prison 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Huertas v. Sec'y Pennsylvania Dep't of Corr.*, 533 F. App'x 64, 66 (3d Cir. 2013) (quoting *Sandin*, 515 U.S. at 484). "*Sandin* instructs that placement in administrative confinement will generally not create a liberty interest." *Allah v. Seiverling*, 229 F.3d 220, 224 (3d Cir. 2000) (citing *Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997)). Nor does Plaintiff have an Eighth Amendment claim based on alleged overstay in administrative segregation. The Seventh Circuit affirmed dismissal of a prisoner's claim that keeping him in disciplinary segregation and out of general population violated the Eighth Amendment because "to succeed on an Eighth Amendment claim, [plaintiff] must demonstrate that being excluded from the general prison population deprives him of the minimal civilized measure of life's necessities, such as adequate food, clothing, shelter, or medical care." *Hernandez v. Hanks*, 65 F. App'x 72, 74 (7th Cir. 2003) (internal quotation marks and citations

omitted). The court of appeals held plaintiff failed to state a claim because he did not allege "that he is being deprived of anything beyond the privilege of being in the general population . . . ." *Ibid.* This was so even though plaintiff was held in segregation beyond his original release date. The court also held plaintiff could not "establish a due process violation without demonstrating that he has a liberty interest in returning to the general prison population after completing his segregation sanction, whatever its length. The length of disciplinary segregation does not implicate a federally protected liberty interest even if the period extends for the entire term of incarceration." *Id.* at 74.

Plaintiff alleges for the first time in his opposition papers that keeping him in administrative segregation for an additional three days was retaliatory. Amended Compl ¶ 7. *See also* (ECF No. 63 at 24). To state a First Amendment retaliation claim, Plaintiff must plead facts suggesting: (1) he engaged in constitutionally protected conduct; (2) an adverse action was taken against him by prison officials sufficient to deter him from exercising his constitutional rights; and (3) there was a causal link between the exercise of his constitutional rights and the adverse action taken against him. *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). There are no facts supporting Plaintiff's allegations on the second and third factors. Nothing suggests a temporal link between any alleged grievances filed by Plaintiff and his alleged overstay in administrative segregation.

This claim is dismissed. 28 U.S.C. § 1915(e)(2)(B)(ii).

## *Conclusion*

For the reasons stated above, Plaintiff's motions for reconsideration, appeal of the magistrate judge's decision, and for the appointment of counsel are denied. Summary judgment is denied as to Plaintiff's denial of medical care claim and conditions of confinement claim based on failure to transfer Plaintiff to an air conditioned or ventilated cell prior to 2016. These claims shall proceed to trial. Plaintiff's claim based on an alleged overstay in administrative segregation is

dismissed. 28 U.S.C. § 1915(e)(2)(B)(ii). Defendants are awarded summary judgment on all other claims.

An appropriate order follows.


DATED: 9/21/18 , 2018

_____
PETER G. SHERIDAN
United States District Judge